JOHN R. CASE, Plaintiff in Error, v. THE HARTFORD FIRE INSURANCE COMPANY, Defendants in Error.

ERROR TO COOK.

Insurers are liable only for direct, and not for remote and consequential losses, occasioned by any peril in the policy.

Where the policy requires the insured, in case of exposure to loss or damage by fire, to use all possible diligence to preserve his goods, and provides, in case of his failure to do so, that the insurers shall not be liable for any loss sustained in consequence of such neglect; if the insured shall remove his goods, the circumstances, as they existed at the time the removal was made, must determine the necessity for the removal; and whatever loss or damage is necessarily sustained by the removal of the property insured, when the danger of its destruction by fire was so direct and immediate, that a failure to have made the removal while he had the power, would have been gross negligence on his part, he is entitled to recover under the policy.

The fire, under such circumstances, may be regarded as the proximate cause of any loss that is sustained.

As a means of proving the amount of loss, in consequence of removal of goods from a store, it is proper for the insured to offer in evidence, his invoices, bills of purchase,

books of account, amount of sales, inventories of stock taken immediately after the loss, together with such facts as may be established by his clerks.

If goods are carelessly removed or wantonly and unnecessarily exposed, the insurers will be released from liability.

THE facts of this case will be found stated in the opinion of the court.

This case was heard before H. T. DICKEY, Judge, and a jury, at December term, 1851, of the Cook Circuit Court. Verdict and judgment for $69.17. Case brought the cause to this court, and assigned errors.

ARNOLD & LAY, for plaintiff in error.

LARNED & WOODBRIDGE, for defendants in error.

TRUMBULL, J. This was an action of assumpsit brought by Case against the Hartford Fire Insurance Company, on a policy insuring the plaintiff against loss or damage by fire, to the amount of $3,000 on his stock of goods in brick store No. 88, Lake Street, Chicago.

By the terms of the policy, the company agreed to make good to Case all such immediate loss or damage, not exceeding the amount insured, as should happen by fire from October 6, 1849, to October 6, 1850.

Annexed to the policy, and forming part of it, is the following condition: " In case of fire, or loss or damage thereby, or of exposure to loss or damage thereby, it shall be the duty of the insured to use all possible diligence in saving and preserving the property; and if they shall fail to do so, this company shall not be held responsible to make good the loss and damage sustained in consequence of such neglect. And it is mutually understood that there can be no abandonment to the insurers of the subject insured."

The testimony shows that the building containing the goods was what is called in Chicago a fire-proof building, though not strictly so; that in the evening of the 10th of August, 1850, the buildings in the rear of the Mansion House, a large wooden building east of, and immediately adjoining, the store of the

57 *

plaintiff, took fire; that the rear of the Mansion House was burned out, and it seemed almost impossible at one time, with the greatest exertions of the fire department, to save the main building; that the fire was a very hot one, the flames at times extending quite over and enveloping at least half the store of the plaintiff; that at one stage of the fire the firemen raised their hose to the top of plaintiff's store and threw water from there upon the burning buildings; that water was also thrown on the store, and came down into the building in considerable quantities; that the store itself was filled with heated air and smoke, and the doors ordered to be thrown open by the fire department, so as to allow the hose to pass through to the rear, but the order was countermanded while the hose was being introduced, for the purpose of taking it to another point; that the wind at the time was from an easterly direction, and, had the main building of the Mansion House burned, no exertions of the fire department could have saved plaintiff's store from destruction, nor could the goods have been removed after the fire had caught in front; that a portion of the goods were damaged by the water and smoke, and most of them removed across the street, to other buildings, about the time the store doors were thrown open; that the fire, after raging some half hour, was subdued without burning the main building of the Mansion House, or any portion of plaintiff's store, though the heat was so great as to crack many of the panes of glass in the windows and scorch the window-frames, through the iron shutters, also as to burn off the paint on the roof, and that the damage to the goods from smoke, water, &c. was appraised at $64.57.

The plaintiff also offered to prove the amount of goods he had on hand in the month of April preceding the fire, by the bills of purchase, books of account, and clerks; then to show the amount of purchases since that time, also the amount of sales and the inventory taken immediately after the fire, to ascertain the amount of goods lost by the removal. All this evidence was objected to by the defendant and excluded by the court, to which decision the plaintiff at the time excepted. The jury returned a verdict of sixty-nine dollars and seventeen cents for the plaintiff.

The only point in the case arises upon the refusal of the Cir-

cuit Court to admit the evidence tending to show that some of the goods had been lost in the removal occasioned by the fire; and this raises the question, whether the insurers are liable for the loss of the goods resulting from their removal under the particular circumstances of this case.

On behalf of the defendant, it is insisted, that the policy only insures against immediate loss or damage by fire, and that there can be no fire without ignition.

Such is the law as stated in 2 Greenleaf's Evidence, § 405. The author says, " The proof of loss must show an actual ignition by fire; damage by heat alone, without actual ignition, not being covered by the policy"; and he refers to the case of Austin *v.* Drew, reported in 4 Camp. 360, and 6 Taunt. 436, as his authority. By referring to that case, it will be seen that it does not support the position. The case was this: The premises insured were used as a manufactory, and were heated by a stove on the ground floor. A flue went from the stove through each story, seven or eight in number, to the top of the building. There was a register in the flue with an aperture into the rooms, whereby more or less heat might be introduced at pleasure. One morning the fire being lighted as usual below, the servant whose duty it was to have opened the register in the highest story forgot to do so. The consequence was that the smoke and heat were completely interdicted in their progress through the flue, and came into the rooms, doing some damage, but there never was more fire than was necessary to carry on the manufactory, and the flame never got beyond the flue. GIBBS, C. J., said, " There was no fire except in the stove and the flue, as their ought to have been, and the loss was occasioned by the confinement of heat. Had the fire been brought out of the flue, and any thing had been burnt, the company would have been liable. But can this be said where the fire never was at all excessive, and was always confined within its proper limits? This is not a fire within the meaning of the policy, nor a loss for which the company undertake. They may as well be sued for the damage done to drawing-room furniture by a smoky chimney."

The principle upon which this case turned was, that there had

been no fire except in the usual and proper place where a fire ought to have been, and that the parties never contemplated insuring against a loss occasioned by the ordinary fire kept up in the stove; but had the same injury resulted from the burning of an adjoining house, or from heat proceeding from any other than the ordinary fires in the building, the decision would have been very different. Suppose some of the wares and merchandise of the plaintiff in this case, as lead pipe, for instance, had been of a fusible character, and that they had been melted by the heat from the burning of the adjoining building, would it be pretended for a moment that he could not recover for the damage because the articles were not actually ignited? Had the store actually burned down, it no doubt contained many articles which the fire would have ruined, and yet were not susceptible of ignition. The idea that there can be no loss by fire without actual ignition, is so unreasonable to my mind, that, but for the respectable authorities that have been vouched for the position, I should not have thought it worthy a moment's consideration.

The case of Hillier *v.* The A. M. Insurance Company, (3 Barr, 470,) is also relied upon by the defendant. The court in that case do say, that where the peril insured against "is fire, the instrument of destruction must be fire," but the case itself was a very different one from this. In that case the building from which the goods were removed was not touched by the fire, but the fourth house from it was at one time on fire, and it is stated that the goods were not injured by endeavors to extinguish the fire or save them from it, but in the removal of them under an apprehension that they might be reached by the flames which had caught one of the houses in the same block. The court, moreover, intimate in that very case, that had the building containing the goods been touched by fire, or the goods injured in their removal while it was on fire, or in efforts to put out the fire, the loss would have been within the policy, and yet how could this be if the instrument of the destruction must be fire itself? Surely an injury to goods by water thrown to extinguish a fire would not be an injury to the goods by actual ignition, and yet no case can be found where an insurance against damage by fire has been held not to extend to such a case.

The rule undoubtedly is, that insurers are liable only for direct, and not for remote and consequential losses occasioned by any peril in the policy. But what damage is direct, and what consequential, is often a difficult question to determine.

It is said in 1 Phillips on Insurance, 690, that " a loss comes under a particular risk, not merely when it is a consequence that follows the actual occurring of the risk, but when it can fairly be attributed to the risk, and is occasioned by it, or arises directly on account of it."

The Supreme Court of the United States, in the case of Peters *v.* Warren Insurance Company, (14 Peters, 108,) lay down this rule, that " whenever the thing insured becomes by law chargeable with any expense, contribution, or loss, in consequence of a particular peril, the law treats that peril, for all practicable purposes, as the proximate cause of such expense, contribution, or loss "; and the same case decides, that whatever loss arises as a natural or necessary consequence of the peril insured against is within the policy.

The cases are numerous in which recoveries have been had on policies insuring against loss by fire when the injury has not resulted from actual burning. Walters *v.* Louisville Merchants Insurance Co., 11 Pet. 224; The City Fire Insurance Company *v.* Corlies, 21 Wend. 367; Pentz *v.* Receiver, Etna Fire Insurance Company, 9 Paige, 568.

The policy in this case required the plaintiff, in case of exposure to loss or damage by fire, to use all possible diligence to preserve his goods; and provided, in case of his failure to do so, that the company should not be answerable for any loss sustained in consequence of such neglect. Suppose the front of the Mansion House had taken fire, as there was every probability at one time it would, and it had become impossible afterwards to remove plaintiff's goods, and they had been destroyed, would the insurance company, under such circumstances, have been liable for their loss, it clearly appearing that the plaintiff neglected to remove them at the time when it could have been done with safety, and the danger of their destruction by fire was imminent. The circumstances, as they existed at the time the removal was made, must determine the necessity for it; and,

whatever loss or damage the plaintiff necessarily sustained by the removal of the property insured when the danger of its destruction by fire was so direct and immediate that a failure to have made the removal while he had the power would have been gross negligence on his part, he is entitled to recover in this action. The fire, under such circumstances, may in a just sense be regarded as the proximate cause of the loss.

The evidence offered and excluded was somewhat loose, and may not of itself have been very satisfactory to the jury if admitted, but, in connection with other testimony, it may have have been very important, and we think, under the circumstances of this case, should have been permitted to go to the jury.

It is not, however, from every loss arising from the removal of goods, to save them from burning, that the company would be liable. Goods may be so carelessly removed, and so wantonly and unnecessarily exposed, as to relieve the company from all liability on account of their injury or loss.

An objection has been urged to the recovery for the loss of goods in this case, for the want of a count in the declaration specially alleging such loss by removal.

In the view taken of the case such a count was unnecessary; as, if a recovery can be had for the loss at all, it must be on the ground that it is to be treated, in a particular point of view, as the natural or necessary consequence of the fire itself.

Judgment reversed, and cause remanded.

*Judgment reversed.*

Treat, C. J., dissented.