## SAMUEL WITHERELL *versus* MAINE INSURANCE COMPANY.

A party cannot be bound by a paper which does not on its face purport to have been made by him, or in his behalf, unless it is shown, by other evidence, that he has adopted it, or agreed to be bound by it.

The reference in a contract to a paper of the same name or general description as the one produced in evidence, will not authorize a judge in his instruction to the jury to assume that the paper produced is the one referred to in the contract; but it is for the jury to determine whether the paper is the one referred to.

Objections to testimony, not made at the trial, are waived.

Warranties in a policy of insurance, or in the application when made a part of the policy, must be fully kept and performed, without reference to the question whether they are material or immaterial.

But misrepresentations do not avoid a policy of insurance unless they are material or prejudicial to the insurers.

The renewal of a policy of insurance, without any new application, stands upon the same ground as the original policy.

Misrepresentations in obtaining a policy of insurance are waived by a renewal of the policy, with a knowledge of the risk.

If the instructions applicable to the case are correct, the verdict will not be set aside, although the presiding Judge give erroneous instructions upon matters not relating to the case.

If the notice of a loss to the insurers is sufficient in form, it is for the jury to determine whether it is sufficient in substance.

If the assured uses his utmost exertions in protecting and securing the property insured, at, during, and subsequently to the fire, a loss by larceny falls upon the insurers.

⁂ ON EXCEPTIONS BY DEFENDANTS.

ASSUMPSIT on a policy of insurance upon a stock of goods, dated June 26, 1857, and renewed June 26, 1858.

*Hayden,* for the plaintiff.

*Williams & Cutler,* for the defendants.

The case is stated in the opinion of the Court which was drawn up by

MAY, J.—That Randall B. Clark was the general agent of the defendants, with full power to issue policies of in-

surance in their behalf, according to his own discretion, was not, at the trial of this action, and is not now denied. In 1857, while he was such agent, the plaintiff applied to him for insurance on his stock of goods in Calais, and inquired at what rate he would take the risk. Clark declined to insure until he had a description of the premises. The plaintiff, being himself but little acquainted with the premises, said he would write to one Claridge, his former clerk, and obtain one. The plaintiff testifies that all the description which was required by the agent related to the distances of the surrounding buildings from that in which the stock to be insured then was. He further says, that nothing was said about chimneys or stove pipes, and that the only thing talked about was the distances from other buildings. This is not contradicted by the testimony of Clark, the agent.

It appears that some days or a week after, the plaintiff brought a letter or memorandum from Claridge, containing the words and figures following, viz. : — "Distance of Pool's block from store, west side, 12 feet; length of block on Maine street, 59 feet; east side store, the block joins; length east side, 45 feet; buildings in rear store, 11 feet, with a street 4 rods wide. No fire in summer — burn coal — good pipe and chimney. "William C. Claridge.

"Calais, June 24, 1857."

This paper was put into the case by the defendants, and, with the plan to which it was attached, was claimed to be the application which is referred to in the policy, and therein made a part of the contract of assurance. This claim was denied by the plaintiff, who swears that paper was never delivered to Clark as an application for insurance, and that the memorandum signed by Claridge was not connected with the plan as attached to it. On the other hand, Clark swears that he made the plan under the direction and with the assistance of the plaintiff, but cannot say when.

Under such circumstances, it is very clear that the question whether the memorandum and plan were identified as the application referred to in the policy, was a question of

fact for the jury, and was therefore rightly submitted to them. A party cannot be bound by a paper which does not on its face purport to have been made by him, or in his behalf, unless it first be shown, by other evidence, that he has in some way adopted it as his own, or has agreed to be bound by it. The reference, in a contract, to a paper of the same name, or of the same general description as the one produced in evidence, will not authorize a Judge, in his instruction to the jury, to assume that the paper produced is the identical paper referred to in the contract. *Denny* v. *Conway Stock & Mutual Fire Ins. Co.*, 13 Gray, 492. Whether the jury have found against the evidence upon this question of identity, is not open to us upon exceptions, there being no motion to set aside the verdict as against the weight of evidence.

It is also objected, that it was not competent for the plaintiff to state in his testimony, that he did not consider the writing and plan produced, the application, when the policy itself makes these a part of the contract. No such objection appears to have been taken at the trial, and the objection, even if the testimony was inadmissible, now comes too late.

The jury were instructed that, if the letter of Claridge was a part and parcel of the application for insurance, it became a part of the contract between the parties, and if wood was used and fires made in the summer, when it had been represented that coal was used, and no fire made in the summer, the plaintiff could not recover. This was a sufficient recognition and statement of the rule, now so well settled, that a warranty in cases of this kind, the statements in the application being such, must be fully kept and performed without any reference to the question whether the thing warranted was material or immaterial.

On the other hand, the jury were told that if other things were stated in the paper containing the description, than what the agent had required, they would not bind the plaintiff, *unless they were a part of the application;* but the plain-

tiff was bound by the representations procured by him of Claridge, so far as relates to distances and directions of adjoining buildings; and that if there was any thing wrong in the letter or writing procured from Claridge, so far as relates to distances, and the variance was material, the plaintiff was bound by it, and could not recover. Here, again, the presiding Judge seems to have recognized the distinction between a warranty and mere representations, which work no injury to the plaintiff, unless they were material, or in some way prejudicial to the other party. We do not perceive that the defendants have any ground of complaint, that the jury were not properly instructed in these particulars.

The renewal of the policy seems to have been fully authorized. The agent does not appear to have required any new warranty or representations other than those which were made when the policy was issued, nor does any such appear to have been made. He seems to have acted upon these, unless he acted upon the knowledge which he had acquired of the premises, from his own personal view sometime after the policy was first issued. Under such circumstances, the renewal of the policy stood upon the same grounds as the policy itself. There being no change in the original application or representations for insurance, so far as the evidence discloses, there was no necessity for putting any thing in writing in relation to the terms of the new application upon which the policy was renewed, as is now contended.

The instruction, that if the agent saw fit to renew the policy, *after the knowledge of the risk*, the company would be bound by it, notwithstanding the representation in the letter as to distances, but not as to fuel or fires, is not erroneous. The representation that the buildings in the rear of the store were 11 feet distant, when in fact they were some 5 feet nearer, according to the testimony of Solomon B. Pool, is a circumstance by which the defendants could not have been defrauded or injured if the agent did not renew the policy upon such representation, but *upon his own knowledge of the fact.* He seems to have been authorized

to issue policies without any written application; and this would involve the power to waive any written change in an application for renewal, and to renew them in the same manner. His knowledge, as well as his action, would be the knowledge and action of the company, by which they would be bound.

Exception is also taken to the preliminary remark of the Judge, in his charge, that if the plaintiff had complied with all the conditions of the policy that were material, and has suffered loss by fire, he is entitled to recover to the amount of his loss, not exceeding $2000, the sum secured by the policy. The ground of the objection is, that the word material, as used in this instruction, authorized the jury to decide what part of the contract was material, and that, under this instruction, they might have found that any particular fact warranted as true was immaterial, and that therefore the plaintiff might recover, notwithstanding such fact was not proved. But in view of the subsequent instructions as to the necessity of proving all the facts stated in the application, if the paper signed by Claridge, and the plan, had been proved to be such, it is fully apparent that the word material was here used in the sense of necessary, and must have been understood by the jury in the same manner as if the Judge had said, if the plaintiff has complied with all the conditions of the policy necessary to be proved, then he may recover. The jury, as reasonable men, could not have understood, in view of the whole charge so far as reported, that they were to determine, under this particular instruction, what facts were material, or required by law to be proved, in order to the maintenance of the suit, but simply whether such facts as the Court should instruct them were essential to the maintenance of the suit, had been proved.

Again, it is urged that the Judge erred in making a distinction between stock and mutual insurance companies, which was calculated to mislead the jury. It is not denied that the instructions, so far as they relate to stock companies, are right, and we are unable to see how the defendants

could have been prejudiced by those relating to mutual companies, even upon the hypothesis that they were erroneous, which we by no means intend to admit.

The next objection is, that there was error in regard to the instruction relating to the notice of loss, required by article 13, of the conditions annexed to the policy. The instruction was, that the paper called a statement of loss, marked B, and put into the case, in matter of form was sufficient, but whether so in substance was left to the jury, with the further instruction that, if it was designed as a fraudulent representation as to the amount of the loss, the plaintiff could not recover. The argument now addressed to the Court upon this point, so far as it relates to the substance of the notice, was very proper before the jury, but certainly has but a slight bearing upon the question, whether the jury was the appropriate tribunal to determine its sufficiency in that respect. If it was a fact for the Court to determine, we cannot say, in view of the liberality with which conditions of this kind are to be construed in favor of the assured, that the jury have not decided the matter correctly. We perceive no error in the instructions on this point. *Bartlett* v. *The Union Mutual Fire Ins. Co.*, 46 Maine, 500.

The only remaining exception relates to the rule of damages. On this point, the jury were instructed that larceny might be one of the incidents attending a fire, and that, if the plaintiff had used his utmost exertions in protecting and securing the property insured, at, during, and subsequent to the fire, such loss, if any, should fall upon the insurers. The rule of damages, as laid down by Parsons, in his Commercial Law, c. 19, § 7, p. 526, is, that in cases of actual ignition the insurers are liable for the immediate consequences; as the injury from water used to extinguish the fire; or injury to *or loss* of goods caused by their removal from immediate danger of fire, but not from a mere apprehension from a distant fire, even if it be reasonable; or, if the loss or injury might have been avoided by even so much care as is

usually given in times of so much excitement and bustle. The instruction given not only required the larceny to be an incident of the fire, but required more care than the rule, as stated by Mr. Parsons, demands, of which the defendant cannot complain.

In *Agnew* v. *The Insurance Company*, decided by the District Court for the city of Philadelphia, and reported in the American Law Reporter, vol. 7, p. 168, HARE, J., in delivering the opinion of the Court, remarks, that, "if duty requires the occupants of a house about to be destroyed by fire to carry their property out of the door, or even to throw it from the windows rather than permit it to become a prey to the flames, they ought not to be the losers by fulfiling the obligations thus imposed upon them; nor can it make any matter whether the injury arises from the fracture of a mirror or other piece of furniture by the fall, or the abstraction of a bale of goods after it reaches the pavement by a thief." The marginal note in the case, is, that "a loss which arises from the efforts made to prevent goods from being destroyed by fire must be borne by the assurer and not by the insured, whether the particular injury in question be produced by water used to extinguish the flames, or results from dangers, such as theft, to which the property is exposed in an attempt to remove it to a place of safety."

We cannot doubt that where there is an actual fire and the goods are removed by reason of imminent danger, occasioned by such fire, and the insured exercises his utmost exertions to protect and secure the property, any loss arising from a larceny of the goods is within the risks insured against, and must be borne by the insurer. Especially should this be so in a populous city. A different rule might be prejudicial to the interest of those who insure. That such is the rule in regard to injury done to goods in being removed under such circumstances, or by reason of water thrown upon them to put out the fire, or by other acts done *ex necessitate* to preserve them, seems to be well settled. Beaumont on Ins., 41. *Scripture* v. *Lowell Mutual Fire*

*Ins. Co.*, 10 Cush. 356. And no reason is seen for any difference between such an injury and an actual loss by theft. *Case* v. *Hartford Fire Insurance Co.*, 13 Ill., 676. *City Fire Ins. Co. v. Corlus*, 21 Wend., 367. That such a loss is within the policy, especially when it occurs in cities, is settled in New York, 1 Bosworth, 367, and in Pennsylvania, 10 Casey, 96.                    *Exceptions overruled.*

TENNEY, C. J., APPLETON, CUTTING and KENT, JJ., concurred.