## 14226

WATSON v. AMERICAN COLONY INS. CO. OF NEW YORK

(188 S. E., 692)

*Messrs. Haynsworth & Haynsworth* and *Watkins & Prince,* for appellant,

*Messrs. Allen & Doyle,* for respondent,

February 12, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

This action was brought by Mrs. Lena P. Watson for the recovery of $1,000.00 and interest, upon a policy of fire insurance issued to her by the defendant, wherein she was the named assured. The policy, dated December 22, 1932, insured the plaintiff, among other things, for $1,000.00 against all direct loss and damage by fire resulting to household and kitchen furniture. The term "household and kitchen furniture," as defined in the policy, embraces and covers "jewelry in use." The complaint alleged that on or about December 11, 1933, and during the currency of the policy, plaintiff's diamond ring, while in use, was damaged and destroyed by fire to such an extent as to render it worthless. The defendant denied liability on the ground that the loss was not brought about by fire within the meaning of the policy, but by the independent act of the plaintiff in inadvertently throwing the said diamond ring into a stove, where it was consumed by a "friendly" fire.

At the close of the testimony for the plaintiff, counsel for the defendant announced that they would offer no testimony, and made a motion for a directed verdict upon the grounds: (a) That the risk insured against is limited to loss directly resulting from a hostile fire as distinguished from that of a friendly fire, and that the fire which destroyed the ring in question was what is termed a friendly fire; (b) that the efficient cause of the loss was brought about by a means not insured against within the contemplation of the parties to the contract.

This motion was refused, and the case submitted to the jury, who returned a verdict for the plaintiff in the sum of $750.00, with interest from the date of the loss. The de-

fendant also made a motion for a new trial, which motion was refused.

The appeal questions the correctness of the ruling of the trial Judge in overruling the motion for a directed verdict, upon the grounds stated.

The facts in the case are not in dispute, but it is necessary to make a statement of the manner in which the legal issues arose, and this involves a brief outline of the testimony.

The only testimony in the case is that offered by the plaintiff, and may be summarized as follows:

Mrs. Watson testified that on the afternoon of December 11, 1933, she was engaged in making plum puddings and fruit cake in her kitchen, and was also supervising work in her yard. She had removed her rings, three in number, including her diamond engagement ring, from her fingers, and had placed them on the mantelpiece in her bedroom. She left the kitchen to answer the telephone in her bedroom, and, as she opened the bedroom door near which the telephone was located, she discovered the fire on the mantel in her bedroom. There was on the mantel a large amount of Kleenex, a highly combustible cleansing tissue; this had ignited, presumably from a cigarette on a nearby ash tray, and was in flames. Plaintiff, realizing, as she testified, that the blaze must be stopped, quickly went to the mantel, and, using a towel which she had in her hand, seized the burning mass, and deposited it in the stove in which a fire was burning, about three steps removed from the mantel. In gathering the burning mass from the mantel, plaintiff unwittingly and inadvertently removed with it her engagement ring, which was thus deposited with the burning Kleenex in the stove. The diamonds in the ring were thereby completely destroyed. The platinum ring in which the diamonds were set, bearing the evidence of the combustion of the diamonds, was subsequently recovered from the ashes in the stove.

Mr. R. E. Cochran, a retail jeweler, testified that he had handled and knew the ring in question, and that the value of

the diamonds destroyed was $750.00. He further testified that it would take considerable heat to melt a diamond, and stated that enough heat for that purpose would not be generated by the burning Kleenex or tissue paper.

This action is somewhat novel, but that is no objection to it if it be not new in principle. It is a truism that the law endures no injury, from which damage has ensued, without some remedy; but directs the application of principles already established to every new combination of circumstances that may be presented for decision. The case at bar involves the application of an old principle to a somewhat unusual state of facts. It is urged here, as it was on the circuit, that, admitting everything which the plaintiff has alleged, she is not entitled to recover, because the loss sustained by her was directly and proximately caused by what is known as a friendly fire, and counsel cites several cases in support of this contention. Able and exhaustive briefs submitted by counsel for the appellant, and by counsel for the respondent, have materially aided in the examination of this question, and other questions naturally arising and related to the issues made in the case.

It is conceded by appellant that the fire burning on the mantelpiece was a hostile fire. We think it equally clear that the fire burning in the stove may be denominated as a friendly fire. It may also be agreed, subject, however, to some qualifications, that "a friendly fire is not within the undertaking of the insurance company at all. * * * In the sense in which the word 'fire' is used in the policy, there has been no fire so long as it is kept within the proper and accustomed place. In common parlance one has not had 'a fire' so long as it has only burned in the place where it was intended to burn, and the sense in which that word is used in common parlance accurately indicates the sense in which it is employed in a fire insurance policy" (*Reliance Insurance Company v. Naman,* 118 Tex., 21, 6 S. W. (2d), 743, 745) ; and that, as held in *Harter et al. v. Phoenix Insurance Com-*

*pany of Hartford, Conn.,* 257 Mich., 163, 241 N. W., 196, 197, "a loss of articles placed, either inadvertently or purposely, in a friendly fire, is not compensable under a policy against loss by fire, and it was unnecessary to word a policy so as to cover such contingency."

In the view we take of this case, however, it is needless to theorize upon the distinction between a "friendly" and a "hostile" fire. To concentrate attention upon and emphasize the fact that the ring was destroyed by the fire in the stove, the friendly fire, would serve only to divert attention from the proper inquiry, and to becloud instead of elucidate the subject in hand. We agree with the argument of the respondent that the fact of plaintiff's loss, under the circumstances recited, is the controlling factor in determining the liability of the defendant, and not so much the manner in which such loss was accomplished. If the burning mass which plaintiff gathered from the mantel had been thrown into the coal scuttle, or into the yard, or elsewhere, and such effort to avert the impending disaster had resulted in the loss of plaintiff's ring, we think the liability of the appellant would not be seriously questioned. Why should the result be otherwise when plaintiff disposed of the burning mass by depositing it in the most readily available place? It might be well to call attention here to the fact that there is no suggestion that plaintiff's conduct on the occasion of her loss was not that of a person of ordinary prudence. Indeed, if that were not actually admitted throughout the trial of the case, the proper submission of the case to the jury and its verdict for the plaintiff definitely disposes of any question in that regard. Nor is there the slightest suggestion of evil motive or fraudulent design on the part of the plaintiff. This is especially disclaimed by the appellant and, under the evidence, properly so.

> The outstanding and notable fact in this case is that the fire on the mantel was a hostile fire. It is generally held that damages resulting from efforts made in

good faith to save property from such a fire, by water, or breakage, or removal, or loss by theft consequent thereto, are within the loss covered by a policy against damage by fire. 26 C. J., 341, §§ 431, 432, 433; *Farmers' & Merchants' Ins. Co. v. Cuff,* 29 Okl., 106, 116 P., 435, 35 L. R. A. (N. S.), 892; *Talamon v. Home & Citizens' Mutual Ins. Co.,* 16 La. Ann., 426; *White v. Republic F. Ins. Co.,* 57 Me., 91, 2 Am. Rep., 22; *Witherell v. Maine Ins. Co.,* 49 Me., 200; *Lewis v. Springfield F. & M. Ins. Co.,* 10 Gray (Mass.) 159; *Whitehurst v. Fayetteville Mut. Ins. Co.,* 51 N. C., 352.

It is not questioned that the plaintiff acted in good faith to save her residence from destruction. If, instead of attempting to quench the flames on the mantel, which threatened the destruction of the house, she had first thought to save her rings, and had removed them to a place of safety from which they were thereafter stolen, it would not be seriously contended under the authorities cited and the general law that the insurer under such circumstances would not be liable for her loss; it having occurred in the effort to save property from destruction by a hostile fire. Nor would it be seriously questioned that, if in removing the flaming mass she had displaced the rings and they had fallen into a friendly fire in a fireplace and been destroyed, the result would be the same, and liability would attach to the insurance company. Or, suppose the subject of insurance was a valuable vase, or a valuable work of art, such as a picture, and they should be destroyed under similar circumstances by being inadvertently knocked off the mantel while a hostile fire was being fought, liability would attach in such a case; or suppose, for the sake of the argument, we impart the characteristic of fragility to the ring in question, and it fell to the floor and was shattered in consequence of efforts to put out a hostile fire, the resulting loss would be the same as being thrown into the stove and being destroyed. There are no

justifiable legal reasons for distinctions between the stated suppositions and the facts of this case.

In the case of *Hillier v. Allegheny County M. Ins. Co.,* 3 Pa., 470, 45 Am. Dec., 656, 657, it is said: "Loss by Fire, What included in.—In determining the liability of an insurer for a given loss, the general rule is well settled, and applies to all kinds of insurance, although special applications of the rule are more often made in cases of fire insurance, that the insurer is liable for every loss that necessarily follows from the occurrence of the peril insured against, if it arises directly and immediately from such peril, or necessarily from incidental and surrounding circumstances, the operation of which could not be avoided."

And in 26 C. J., 341, § 430: " * * * Any loss resulting from an effort to put out a fire or otherwise save the property, whether by spoiling the goods or otherwise, directly or indirectly, is within the policy."

There can be no reasonable distinction on principle under these authorities, whether the damage or loss to insured property results from the intentional removal of goods to a place of safety, on the one hand, or whether, on the other hand, such loss or damage results through inadvertence while trying to put out the fire. Such an inadvertence has occurred in the case at bar. In either instance, the loss or damage would be deemed to have been suffered as the direct consequence of a hostile fire.

Nor will considering this case from the standpoint of proximate cause aid the appellant. The term "proximate cause" includes exact definition, although the attempt has been made many times by law writers and judges to define it in its various applications to the facts of various cases. Ordinarily, what is the proximate cause of an injury is a question for the jury.

In *Russell v. German F. Ins. Co.,* 100 Minn., 528, 111 N. W., 400, 403, 10 L. R. A. (N. S.), 326, it is said: "That which is the actual cause of the loss, whether operating di-

rectly, or by putting intervening agencies, the operation of which could be reasonably avoided, in motion, by which the loss is produced, is the cause to which such loss should be attributed."

In speaking of the rule as applied to insurance cases, it is said (Volume 3, § 2832, Joyce on Insurance): "It may be generally stated that the loss in insurance cases must be proximately caused by a peril insured against, and that the contract does not contemplate an indemnity to the assured, where the peril is the remote cause of loss."

In discussing the same question, Mr. Phillips (Phillips, Insurance, § 1132) observes: "In case of the concurrence of different causes, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient predominant peril, whether it is or is not in activity at the consummation of the disaster."

In our own case of *Harrison v. Berkley,* per Wardlaw, J., 1 Strob. Law, 525, at page 549, 47 Am. Dec., 578, it is said: "Such nearness in the order of events, and closeness in the relation of cause and effect, must subsist, that the influence of the injurious act, may predominate over that of other causes, and shall concur to produce the consequence, or may be traced in those causes"; and again, 1 Strob Law, 525, at page 551, 47 Am. Dec., 578, the learned Judge said: "The defendant cannot complain that an agent, which his own act [we interpolate 'hostile fire'] naturally brought into operation, has occurred to produce the result. The proximity in order of events, and intimacy of relation as cause and effect, between the injurious act and the damage, are as great here as in various cases which have been cited."

In the case of *Milwaukee, etc., Ry. Co. v. Kellogg,* 94 U. S., 469, 474, 24 L. Ed., 256, quoting from *Scott v. Shepherd,* reported in 2 W. Bl., 892, 3 Wils., 403, it is said: "The primary cause may be the proximate cause of a disaster, though it may operate through successive instruments, as an article at the end of a chain may be moved by a force

applied to the other end, that force being the proximate cause of the movement, or as in the oft cited case of the squib thrown in the market place."

The question always is, was there an unbroken connection between the wrongful act and the injury—a continuous operation? Did the facts constitute.a continuous succession of events, so linked together as to make a natural whole, or was there some new and independent cause intervening between the wrong and the injury? It is admitted ordinarly that the rule is difficult of application. The appellant calls to our attention the case of _Lewis v. S. A. L. Railway,_ 167 S. C., 204, 166 S. E., 134, 137, which contains the following statement of the law bearing on this question:

"The test, therefore, of the sufficiency of intervening causes to defeat recovery is not to be found in the mere fact of their existence or number, but rather in their nature, and the manner in which they affect the continuity of the operation of the primary cause, or the connection between it and the injury. If they so affect it that the injury cannot fairly be said to be the natural and probable consequence of the primary cause, they become the proximate or efficient, and the primary becomes the remote, cause. The law does not go back of the last efficient cause. [And cases cited.]· * * *

"Where, in the sequence of events between the original default and the final mischief, an entirely independent and unrelated cause intervenes, and is of itself sufficient to stand as the cause of the mischief, the second cause is ordinarily regarded as the proximate cause and the other as the remote cause."

And the conclusion is drawn from this case that the act of the plaintiff in throwing into the stove fire the burning Kleenex tissue with which she had inadvertently gathered up the diamond ring was the efficient intervening cause between the original hostile fire and the friendly fire which

actually destroyed the ring, and that therefore under the law of proximate cause the hostile fire was the remote, and the friendly fire the proximate, cause of the loss.

However, as was held in *Russell v. German F. Ins. Co., supra,* and the other cases cited, it is not necessarily the last link in the chain of events which constitutes proximate cause, but that which is the controlling, efficient, and predominant cause—that from which the effect might be expected to follow—without the concurrence of any unforeseen circumstances. In our opinion, what the plaintiff did in this case, confronted by imminent danger, was exactly what the insurance company might reasonably have foreseen she would do. Her act cannot be regarded as a new, unrelated, and independent intervening cause. She was merely an agent or instrument logically and inevitably galvanized into activity as a natural consequence of the primary and proximate cause, which was in this case the hostile fire. Experience and observation alike demonstrate conclusively that most human beings react in the same way when their property is on fire. Their first thought and their first effort, even when hopelessly abortive, is to extinguish the fire and save their property from destruction. It therefore must be assumed to be within the contemplation of the parties to an insurance contract that the insured in case of fire will endeavor to quench the flames. Indeed, a high moral duty requires that this be done, and if loss and damage follow in the wake of the effort to fight the fire, that is one of the consequences and results insured against under the policy.

To justify the Court in taking a case from the jury, it must be able to say with judicial certainty that the injury is or is not the natural and probable consequence of the act complained of.

The Circuit Judge committed no error in overruling the motion for a directed verdict and submitting the question to the jury.

It is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.