## DENHAM v. LA SALLE-MADISON HOTEL CO.
### No. 9531.

Circuit Court of Appeals, Seventh Circuit.
June 7, 1948.

Rehearing Denied July 26, 1948.

John L. Davidson, David J. Kadyk, C. H. G. Heinfelden and Lord, Bissell & Kadyk, all of Chicago, Ill., for plaintiff-appellant.

Fred W. Potter and Holmes, Dixon, Scott & Knouff, all of Chicago, Ill., for defendant-appellee.

Before SPARKS, MAJOR and KERNER, Circuit Judges.

MAJOR, Circuit Judge.

This is an appeal from a declaratory judgment in an action brought pursuant to Sec. 274d of the Judicial Code, 28 U.S.C.A. § 400, declaring the extent of the liability of the plaintiff and his co-insurers (hereinafter referred to as the plaintiff or insurer) on their policy of insurance indemnifying the LaSalle-Madison Hotel Company (hereinafter referred to as the defendant, insured or hotel company) against liability for damage to or loss of property of any guest or invitee of defendant's hotel. A fire occurred on June 5, 1946, which compelled all guests of the hotel to leave in great haste, and when they were later permitted to return to their rooms for the purpose of obtaining their belongings, approximately 250 guests discovered that their property had been damaged by fire, smoke or water, or had disappeared from their rooms. (The parties treat the property which had disappeared as having been stolen, and we shall do likewise.)

The provisions of the policy which give rise to the primary issues in dispute are:

"Section 1.—Insuring Agreements.

"A. Loss Liability. To pay, subject to the limits expressed in Section III B. hereof, on behalf of the Assured all sums which

the Assured shall become legally obligated to pay to any person or persons by reason of liability for damage to or loss of property of any guest or invitee while said property is in the custody or control of the Assured or on the premises of LaSalle Hotel, Chicago, Illinois * * *.

\*    \*    \*    \*    \*    \*

"Section III.—Conditions.

"B. Limits of Liability. The limit of Underwriters' liability for any one occurrence or catastrophe during the Policy period is $10,000 (Ten Thousand Dollars) for all loss of and damage to property of any claimant or claimants.

"Any payment made by Underwriters on account of such loss or damage shall reduce Underwriters' liability by the amount so paid except as provided by Condition H. hereof for reinstatement of Insurance for subsequent losses.

\*    \*    \*    \*    \*    \*

"H. Reduction in Amount of Insurance and Reinstatement. Any payment made under this Policy shall reduce the aggregate amount of Insurance by the amount so paid, but in any such case, the amount of Insurance shall be immediately reinstated as respects any subsequent loss, to apply in accordance with the limits of liability as before any loss occurred."

Another provision of the policy having to do with the insurer's obligation to defend the claims here involved will be subsequently referred to.

The contested issues are: (1) whether all losses sustained by the individual guests, including those from theft, constitute "one occurrence or catastrophe," within the meaning of Section III of the policy, as contended by the insurer, or whether the losses sustained by the individual guests from theft each constitute a separate "occurrence," as contended by the hotel company; (2) if the losses of the individual guests by theft each constitute a separate "occurrence," is the insurer liable to the extent of the policy coverage of $10,000 for each of such losses within the terms of the second sentence of Sec. III–B and Sec. III–H; and (3) the extent of the insurer's obligation to defend the claims in suit based upon a provision of the policy which will be subsequently set forth.

For the purpose of the case, the facts were stipulated, which we think important to recite in detail. In a preliminary paragraph it is stated that claims have been made upon said hotel company for damage to or loss of property of guests and invitees aggregating altogether more than $100,000, which claims are made severally by more than 250 persons. The stipulation continues as follows:

"A portion of the claims are for destruction of or damage to property by fire, smoke or water, and the balance of such claims are for property of guests or invitees missing from their rooms on their return thereto subsequent to the fire. That the claims for property damaged or destroyed by fire, smoke or water exceeded Thirty Thousand Dollars ($30,000); and the claims for missing property exceed Sixty Thousand Dollars ($60,000). The fire began in the early morning, at approximately 12:30 o'clock, of June 5, 1946, and developed very quickly and in such intensity that all patrons and employees were compelled to evacuate the premises hastily, and were excluded from the premises until late in the afternoon of that same day, approximately seventeen hours after the fire first commenced. As a result of the fire the hotel premises were rendered unfit for occupancy, and thereafter, for a period of several months, only persons having immediate business in connection with the hotel were permitted access to any part of the hotel. Late in the afternoon of June 5, 1946, the representatives of the hotel and the public authorities began escorting guests and invitees to their respective rooms in the hotel for the sole purpose of recovering any property they had left in such hotel rooms when they evacuated the rooms at the time of the fire. Each guest so escorted to a room was escorted to the room occupied by that guest, and to no other room in the hotel, and no persons were permitted to loiter or visit various rooms about the hotel. Several days were required to escort to their respective rooms all of the several guests seeking to recover property. Some guests did not appear to claim their belongings for several days subsequent to the fire.

It was on the occasion of their being escorted to their rooms that the several respective guests discovered that their property had been damaged by fire, smoke or water, or had disappeared from their rooms.

"It is agreed that the damage by fire or loss by reason of disappearance occurred after the time the fire began in the early morning of June 5, 1946, and prior to the time the respective guests were escorted back to their rooms."

It was further stipulated that the policy covered legal liability to the hotel company in the amount of $10,000, which was tendered in discharge of the insurer's liability for damage to or loss of property of any and all guests and invitees which occurred on the premises of the hotel during or within a period of several days immediately subsequent to the fire of June 5, 1946. It was agreed that the tender was without prejudice to any right of the insurer to deny liability under the policy for any further claim and without prejudice to any right of the hotel company to assert any further or additional claims which might be covered by the policy.

The District Court found the facts as stipulated, the provisions of the policy as above set forth upon which the respective parties relied, and adjudged and declared that under Sec. III–B, the claims of guests and invitees "for destruction of or damage to property on the premises of said Company by fire, smoke or water in the fire on said premises on June 5, 1946 arise out of one occurrence or catastrophe, and that the limit of Underwriters' liability for all such claims is $10,000.00 in the aggregate," and that under the terms of Secs. III–B and III–H "each claim of each guest or invitee for property missing from their separate rooms of said premises upon their return thereto subsequent to said fire constitutes a separate 'occurrence' and a 'subsequent loss' within the provisions of said Policy; and that the limit of Underwriters' liability is $10,000.00 for each such separate claim." The court also determined that the insurer had certain obligations with reference to the defense of claims, to which we shall subsequently refer.

In the beginning, it is important to have in mind what the record discloses as to the time the theft losses occurred with reference to that of the fire. The defendant, evidently in an effort to have the theft losses as far removed from the fire losses as possible, bases its argument upon a false premise. In its brief it states: "It was stipulated that such period [when the theft losses occurred] ran from a minimum of 17 hours after the fire first commenced to several days subsequent to the fire." As we understand this statement and defendant's argument predicated thereon, the theft losses occurred subsequent to the 17 hour period. There is no factual support for such a contention. The stipulation provides "that the damage by fire or loss by reason of disappearance occurred after the time the fire began in the early morning of June 5, 1946, and prior to the time the respective guests were escorted back to their rooms." Counsel for the hotel company confuse the time when the numerous thefts were committed with that of their discovery. This misconception also appears to have been indulged in by the court below.

It is true, according to the stipulation, that it was some 17 hours after the fire commenced before guests were escorted to their respective rooms in the hotel and that it was upon such occasions that the guests "discovered that their property had been damaged by fire, smoke or water, or had disappeared from their rooms." Of course, no inference can be drawn that a theft occurred at the time of discovery or immediately prior thereto; in fact, the time of discovery is wholly irrelevant as proof as to the time the theft took place. While the time of the theft losses with reference to the fire cannot be determined to a certainty, the reasonable, and we think inescapable, inference is that they took place concurrently with the fire losses, that is, during the 17 hour period following the time of the commencement of the fire. The stipulated facts support such an inference. It is agreed that the fire began at approximately 12:30 o'clock of June 5, 1946, and "developed very quickly and in such intensity that all patrons and employees were compelled to evacuate the

premises hastily, and were excluded from the premises until late in the afternoon of the same day, approximately 17 hours after the fire first commenced." Thus, during that period the guests and their property were deprived of the protection which the hotel was obligated to furnish. Here was a fire of catastrophic proportions in a large hotel, with its attending confusion and chaos, during which the management was deprived of the opportunity and perhaps relieved of the responsibility of exercising any care for the protection of its guests and their property. Thus a fertile field and an opportune occasion was furnished for the wholesale thievery disclosed by this record.

After the 17 hour period, public authorities and representatives of the hotel commenced escorting guests to their respective rooms for the "sole purpose of recovering any property they had left in such hotel rooms when they evacuated the rooms at the time of the fire." To argue as the defendant does that these theft losses took place after this 17 hour period is to attribute to the public officials and employees of the hotel a reckless indifference to their duty and responsibility to protect the property of guests. The record furnishes no basis for such an assumption; in fact, it indicates to the contrary. It is stipulated, "Each guest so escorted to a room was escorted to the room occupied by that guest, and to no other room in the hotel, and no persons were permitted to loiter or visit various rooms about the hotel." Thus we think this case must be considered on the factual basis that the theft losses occurred during the 17 hour period, during which the property of the guests through no fault of the hotel remained unprotected, and that such losses occurred concurrently with those resulting from fire, smoke and water. The defendant in its discussion of the plaintiff's obligation to defend the claims involved comes close to conceding as much. In its brief it states: "It is hard to imagine that even an innkeeper can be liable for the theft of the property of guests while he is excluded from possession and control of the premises containing the property he is charged with protecting." Obviously, the time of the commission of the thefts with reference to that of the fire has a material bearing on the question of proximate cause.

Many cases and textbook definitions are cited in support of the contentions of the respective parties. While the legal principles thus announced afford some aid in the solution of the problem, no case is cited which from a factual standpoint is analogous to that here presented. The cases cited by the insurer in the main are those where an insurer has been held liable for a loss even though such loss was occasioned by an act other than the peril insured against, on the theory that the latter was the proximate cause of the former. Applying this reasoning to the instant situation, it is contended that the theft losses were proximately caused by the fire and that consequently all losses were the result of "one occurrence or catastrophe."

We shall refer first to some of the numerous cases relied upon by the insurer. In Case v. The Hartford Fire Insurance Co., 13 Ill. 676, a building was insured against fire. Goods stored in the building at the time of a fire were removed to another building across the street, from which a portion of such goods were stolen. The court held that the fire was the proximate cause of the theft loss and quoted with approval (page 681 of 13 Ill.) 1 Phillips on Insurance: " 'a loss comes under a particular risk, not merely when it is a consequence that follows the actual occurring of the risk, but when it can fairly be attributed to the risk, and is occasioned by it, or arises directly on account of it.' "

In Whitehurst v. Fayetteville Mutual Insurance Co., 51 N.C. 352, at page 356, the court likewise held an insurer liable, where the peril insured against was fire, for the loss of goods stolen during the fire. In so holding, the court stated: "Underwriters are liable when the fire is the act of incendiary and, a fortiori, they are liable for the depredations of thieves who avail themselves of the exposure which is unavoidable on such occasions, and which is incident to the attempt to save the goods for their benefit."

In Hall v. Great American Insurance Co. of New York, 217 Iowa 1005, 252 N.W. 763, the insurer was held liable upon a fire insurance policy for the value of a diamond stud which disappeared at the time of a fire in the insured's dwelling.

In Queen Insurance Co. v. Patterson Drug Co., 73 Fla. 665, 74 So. 807, 812, L.R.A. 1917D, 1091, a recovery was had on a fire insurance policy for the value of goods stolen after removal from the premises threatened by fire, notwithstanding that the policy contained a provision that the insurer should "not be liable for loss caused directly or indirectly by * * * theft." The recovery was sustained on the theory that the loss by theft was not occasioned by an independent act but was the proximate result of the fire.

In Watson v. American Colony Insurance Co., 179 S.C. 142, 183 S.E. 692, a ring disappeared from a mantel during a fire. Recovery was allowed on the theory that the disappearance of the ring was an incident to and therefore a loss occasioned by the fire.

In Tracy v. Palmetto Fire Insurance Co., 207 Iowa 1042, 222 N.W. 447, the plaintiff sued on a fire insurance policy to recover damages caused to an automobile insured against direct loss or damage from fire. The larger portion of the damage recovered resulted from running the car into a ditch subsequent to the time the fire occurred in the automobile. The court, in holding that the fire was the proximate cause, reviewed a number of authorities and stated at page 449 of 222 N.W.: "In all the foregoing cases, the damage by the water or chemical, the theft of the goods, or the damage by removal, was caused by some agency other than the fire, but the fire was held to be the proximate cause, or the cause responsible for the loss or damage. In other words, had it not been for the fire, the property would not have been damaged by the water, or chemical, or the removal, or lost by reason of the theft."

One of the leading and oft quoted cases on the doctrine of proximate cause is Insurance Co. v. Boon, 95 U.S. 117, 24 L.Ed. 395. There, the policy of insurance sued upon covered certain goods in a store building. The policy contained a provision exempting the insurer from liability for "loss or damage by fire which may happen or take place by means of any invasion, insurrection, riot or civil commotion, or of any military or usurped power." In October, 1864, Rebel forces surrounded and attacked the city which was defended by Union forces. During the battle, Union officials ordered fire set to the City Hall to prevent it from falling into the hands of the enemy. The fire spread to the building adjacent to the City Hall and from building to building through two other intermediate buildings to the store containing the insured goods, and destroyed them. It was held "that the fire which destroyed the plaintiff's property took place by means of an invasion or military or usurped power, and that it was excepted from the risk undertaken by the insurers." In discussing the principle of proximate cause, the court stated at page 130 of 95 U.S., 24 L.Ed. 395: "The proximate cause is the efficient cause, the one that necessarily sets the other causes in operation. The causes that are merely incidental or instruments of a superior or controlling agency are not the proximate causes and the responsible ones, though they may be nearer in time to the result. It is only when the causes are independent of each other that the nearest is, of course, to be charged with the disaster."

This definition of proximate cause was cited with approval in Lanasa Fruit Co. v. Universal Insurance Co., 302 U.S. 556, 562, 58 S.Ct. 371, 82 L.Ed. 422.

Norwich Union Fire Insurance Society v. Board of Commissioners, 5 Cir., 141 F.2d 600, involved an action upon a fire insurance policy. The assured operated a grain elevator in which was stored a large quantity of undried corn. It was necessary that the corn be regularly aired by movement in order to prevent its deterioration. A fire occurred which damaged the machinery employed to move the corn. During the six or seven days required to repair the machinery, the corn deteriorated in value to an amount in excess of $25,000. The question for decision was whether the fire was the proximate cause of the loss. The insurer contended that it was not,

that the loss was occasioned by a natural force acting as an independent agency. The court in denying this contention stated at page 602 of 141 F.2d: "It is of no consequence that inherent combustible properties of the corn actually caused the deterioration and loss, for the principle of proximate cause 'applies although within the network of causation there may be found the operation of natural forces' to which the contingency insured against has given play."

If the policy in the instant case had insured the hotel company against loss of its own property as a result of fire, we think under the authorities discussed that there could be no serious question but that the insurer would be liable on its fire policy for the hotel's loss by theft which occurred in connection with the fire. Such being the case, the theft losses would be attributable to "one occurrence or catastrophe," that is, the fire. We doubt if the hotel company would take issue with this view, but it seeks to distinguish the cases to which we have referred on the ground that they involved single coverage fire policies, while in the instant case there is involved a multiple coverage liability policy. Conceding the distinction, it is difficult to discern how it aids the defendant's contention that the theft losses are not attributable to the fire. In other words, if the theft losses can be properly attributable to the fire in one instance, we see no reason why they should not be likewise attributed in the other.

After thus attempting to distinguish the cases above cited, as well as others of similar purport, the defendant cites and relies upon three cases in support of its contention that the theft losses were produced by causes separate and distinct from the fire or that the fire was not the proximate cause of such losses. Mammina v. Homeland Insurance Co., 371 Ill. 555, 21 N.E.2d 726; Howard Fire Insurance Co. v. Norwich & N. Y. Trans. Co., 12 Wall. 194, 79 U.S. 194, 20 L.Ed. 378; Neering v. Illinois Central Railroad Co., 383 Ill. 366, 50 N.E.2d 497. It is interesting to observe that while the defendant attempts to distinguish the cases relied upon by the plaintiff on the ground that they involve single

coverage fire policies, both the Mammina and Howard Fire Insurance Company cases so strongly relied upon by the defendant involved policies of the same category.

Inasmuch as the Mammina case is a decision of the Illinois Supreme Court and is so greatly relied upon by the defendant, it must be given more than ordinary consideration. There, the suit was upon a fire policy issued upon the insured's motor truck, which was seriously damaged by colliding with a railroad train and afterward burst into flames. The proof disclosed that the value of the truck prior to the collision was $2,000, that after the collision but prior to the fire its value was $350, and that its value after the fire was $100. Thus, the damage occasioned by the collision was $1,650, and that occasioned by the fire $250. While loss by fire was the sole peril insured against, the insured sought recovery for the damage occasioned both by the fire and the collision. Plaintiff obtained a judgment on this basis in the lower court, which was reversed by the Supreme Court. It is obvious that the principle of proximate cause was in no way involved because the damage by collision (not insured against) occurred prior to the fire, the peril insured against. This situation alone is sufficient materially to distinguish that case from the instant one. Under the authorities heretofore cited, it can hardly be doubted that the court would have reached a different result if the peril insured against had been collision, by holding that the collision was the proximate cause of the fire. In fact, the court under a similar state of facts so held in Tracy v. Palmetto Fire Insurance Co., 207 Iowa 1042, 222 N.W. 447.

The court in the Mammina case quoted two sections of Phillips in his treatise on the law of insurance (1 Phillips on Insurance, Secs. 1136, 1137), with the comment that they were generally accepted by the courts as stating correct rules of law. The first rule states: "In case of the concurrence of two causes of loss, one at the risk of the assured and the other insured against, * * * if the damage by the perils respectively can be discriminated,

each party must bear his proportion." [371 Ill. 555, 21 N.E.2d 728.]

The second rule states: "Where different parties * * * are responsible for different causes of loss, and the damage by each cannot be distinguished, the party responsible for the predominating efficient cause, or that by which the operation of the other is directly occasioned, as being merely incidental to it, is liable to bear the loss."

The court, in reversing the judgment, applied the first rule to the facts of that case, and the defendant strenuously insists that it must be applied in this case, while the plaintiff contends that the second rule should be applied.

In our view, neither of these rules is decisive as applied to the facts of the instant case. The first rule embraces concurring causes of loss, "one at the risk of the assured and the other insured against," which was applicable to the fact situation in the Mammina case. Here, the risk insured against is for all loss to guests within the maximum coverage occasioned by "one occurrence or catastrophe." If this rule is applied in the instant case merely because the theft damages are ascertainable, there could be no recovery in any case for loss other than from the peril insured against even though such peril was the proximate cause of other ascertainable damages. In this connection, it also may be observed that the defendant for the purpose of applying this rule treats the causes of loss as concurring while, as will be subsequently shown, when arguing that such losses are within the reinstatement provision of the policy, contends that each loss was a separate "occurrence" and a "subsequent loss." Neither is the second rule applicable, as urged by the plaintiff, because that rule contemplates a situation where the damage occasioned by the different causes of loss "cannot be distinguished." Here, the losses sustained by theft have by stipulation been segregated.

In our opinion, a more pertinent rule announced by Phillips (5th Edition) (Sec. 1132) is as follows: "In case of the concurrence of different causes, to one of which it is necessary to attribute the loss, it is to be attributed to the efficient pre-

dominant peril, whether it is or is not in activity at the consummation of the disaster."

Howard Fire Insurance Company, supra, also relied upon by the defendant, is another case where the peril insured against was fire, and the loss by fire occurred subsequent to a collision. We need not analyze this opinion because the facts, the reasoning and the result are quite similar to those of the Mammina case. It is significant to note, however, that the court stated at page 199 of 79 U.S., 20 L.Ed. 378: "It is true, as argued, that as the insurance in this case was only against fire, the assured must be regarded as having taken the risk of collision, and it is also true that the collision caused the fire, but it is well settled that when an efficient cause nearest the loss is a peril expressly insured against, the insurer is not to be relieved from responsibility by his showing that the property was brought within that peril by a cause not mentioned in the contract."

In the Neering case a passenger waiting at a railroad station for a train was assaulted by some unknown person and sued the railroad company for its failure to furnish proper protection and safeguards to the plaintiff while she was on railroad property and waiting for the train. True, there is a lengthy discussion by the court on the doctrine of proximate cause, but we are unable to discern how it is of any benefit to the defendant in the instant situation. The railroad contended that any negligence on its part was not the proximate cause of plaintiff's injury but that such injury was caused by the intervening criminal act of a stranger. That is quite similar to the contention made by the defendant in the instant case, that is, that the theft losses were occasioned by the intervening criminal act of third persons. The court in the Neering case held that there was sufficient evidence to present a jury question as to whether the railroad's negligence was the proximate cause of plaintiff's injury.

It is pertinent to note that the Howard Fire Insurance Company case is cited in Princess Garment Co. v. Fireman's Fund Ins. Co., 6 Cir., 115 F.2d 380, 383, in support of the following statement: "It is

often difficult to separate the proximate from the remote cause but when there are successive causes, each sufficient, acting independently, to produce an effect such as to cause a loss the one last operating on the event is the proximate one, but when there is no order of succession in time and there are two or more concurrent causes of loss, the predominating efficient one must be regarded as proximate regardless of the position of the event as to time. The cause which set the other in motion and clothed it with the power to harm at the time of the disaster must rank as predominant."

This principle of law if correct, as we think it is, furnishes strong support for the contention that the fire was the proximate, predominating and efficient cause of all losses incident thereto. There is no basis for the argument that the losses occasioned by theft succeeded those caused by fire, smoke and water. Moreover, as heretofore shown, the inescapable inference is that all losses occurred concurrently, that is, within the 17 hour period following the commencement of the fire. It was the fire which created the occasion and furnished the opportunity for thieves to operate. Is there any reason to think that there would have been loss by theft in the absence of a fire? As the court observed in Sloan v. Massachusetts Bonding and Insurance Co., 177 App.Div. 483, 164 N.Y.S. 206, 208, "Fire * * * may contribute to the loss by burglary and theft in making easy the work of the thief by removing for a time the usual safeguards against theft."

Therefore, it is our judgment that all losses designated in this suit were the result of causes acting concurrently and that they must be attributed to the fire as the predominant cause. In other words, the fire was the proximate cause. It follows that such losses were the result of "one occurrence or catastrophe" and that the limit of plaintiff's liability is $10,000.

Having reached this conclusion, there is no necessity, although we think it not inappropriate, that we consider defendant's theory that each loss by theft is a separate "occurrence or catastrophe" within the meaning of the policy, and that plaintiff is liable on each of such losses in the maximum amount of the policy. For this purpose we assume, contrary to what we have held, that theft losses are independent of and were not the proximate result of the fire. On this phase of the case, the lower court concluded that under the provisions of Secs. III-B and III-H of the policy "each claim of each guest or invitee for property missing from their separate rooms on said premises upon their return thereto subsequent to said fire constitutes a separate 'occurrence' and a 'subsequent loss' within the provisions of said Policy; and that the limit of Underwriters' liability is $10,000.00 for each such separate claim." As heretofore noted, the material time element is that when the property was stolen, not when discovery was made. Assuming, however, merely for the purpose of the discussion which follows, that each theft constitutes a separate "occurrence," we still do not agree with the court's conclusion that such "occurrence" constitutes a "subsequent loss" within the provisions relied upon.

We have no guide to an interpretation of such provisions except the plain language which they contain. Admittedly, the maximum liability of the plaintiff is $10,000, unless the losses for which defendant claims come within the language of the last sentence of Secs. III-B and III-H. The last sentence of paragraph B merely provides for reinstatement of insurance for subsequent losses as provided by condition H. This latter paragraph is entitled, "Reduction in Amount of Insurance and Reinstatement," and provides: "Any payment made under this Policy shall reduce the aggregate amount of Insurance by the amount so paid, but in any such case, the amount of Insurance shall be immediately reinstated as respects any subsequent loss, to apply in accordance with the limits of liability as before any loss occurred."

To us, by the plain, definite language of this provision both reduction in the amount of insurance and reinstatement are conditioned on the premise that a payment under the policy has been made. Certainly the amount of insurance could not be reduced except upon that premise because it is provided, "Any payment made under

this Policy shall reduce the aggregate amount of Insurance by the amount so paid." The language as it pertains to reinstatement is predicated upon the same premise. It states, "in any such case, the amount of Insurance shall be immediately reinstated," which evidently refers to a case where payment has been made under the policy. But that is not all. The reinstatement takes place only "as respects any subsequent loss." What does the term "subsequent loss" mean? What could it mean, other than a loss which occurred subsequent to a payment made under the policy?

Defendant in its argument that "each theft was a separate 'occurrence' and a 'subsequent loss' under the terms of the Policy, for each of which the Policy provides a potential liability of the Underwriters up to $10,000.00," vacillates between the thesis that the theft losses were subsequent to the fire losses and that they were subsequent to each other. However, as already shown, there is not the slightest factual basis upon which this argument can be predicated. As heretofore stated, we think the fire losses and theft losses occurred concurrently, but certainly there is no basis for an argument predicated upon the fact that the theft losses were subsequent to the fire losses. The record is equally devoid of any proof as to when the theft losses occurred with reference to each other. Whether they were committed simultaneously or, if not, the order of their occurrence is a matter concerning which there is not the slightest proof.

The effect of defendant's reasoning would be to eliminate paragraph B from the policy and make $10,000 the limit of liability for every occurrence or catastrophe regardless of when it took place with reference to some other occurrence. It should be kept in mind that the limit of $10,000 was applicable to "one occurrence or catastrophe" and not to every occurrence or catastrophe. The insurer was never liable for more than $10,000 except and until a situation developed which met the express terms of paragraph H providing for reinstatement. In our view, as a prerequisite to recovery under this paragraph, the burden was upon the hotel company to prove a situation to which the language of that paragraph would apply. Irrespective, however, of any question of burden of proof, there is an utter failure of any showing which would authorize a reinstatement of the policy so that the insurer would be liable for each "successive loss."

This brings us to defendant's contention that plaintiff has a severable obligation to defend the insured against the liability alleged with respect to each claim involved in the suit. It is argued that this obligation exists regardless of whether the insurer is liable in excess of the $10,000 which has been tendered. The contention is predicated upon Sec. 1-B of the policy, which provides:

"It is further agreed that as respects insurance afforded by this policy, Underwriters shall—

"(1) Defend the Assured in his name and behalf any suit against the Assured alleging such loss and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *."

Numerous cases are cited wherein the courts have considered a similar provision. It would serve no useful purpose to enter into an analysis of such cases as they all depend upon the phraseology of the particular provision under consideration. By analogy, however, they are of no benefit to the defendant's contention. True, paragraph (1) gives some color to the defendant's argument, but that paragraph is limited to the phrase which proceeds it, "as respects insurance afforded by this policy." Upon plaintiff's tender of $10,000, its liability for the payment of losses was extinguished. It was only obligated to defendant "as respects insurance afforded by this policy," and there being no further insurance afforded, we are of the view that its obligation to defend was likewise terminated. Defendant's theory would produce the incongruous situation that plaintiff would have a continuing obligation to defend, notwithstanding its obligation to pay has been exhausted. We are of the view that no such liability was intended by the provision in question and that it cannot reasonably be so construed.

The judgment of the District Court is reversed and remanded, with directions that it be vacated and the action proceed in accordance with the views herein expressed.