BALLARD et al. v. CITIZENS CAS. CO. OF NEW YORK.

No. 10425.

United States Court of Appeals
Seventh Circuit.

March 31, 1952.

Floyd E. Thompson, Chicago, Ill., Clarence W. Heyl, Peoria, Ill., Johnston, Thompson, Raymond & Mayer, Chicago, Ill., Heyl, Royster & Voelker, Peoria, Ill., for appellant.

Wallace J. Black, Kenneth W. Black and Glen L. Borden, all of Peoria, Ill., Black, Black & Borden, Peoria, Ill., for appellees.

Before MAJOR, Chief Judge, and DUFFY and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

Defendant insurance company, for a premium of $171.36, issued an indemnity contract to Bertram J. Ballard and Sue D. Ballard (collectively hereinafter called the insured), insuring them for a period of three years against liability for damages in the amount of $2500 which might be asserted under an Illinois statute entitled, "An Act relating to Alcoholic Liquors", Ill.Rev. Stat.1951, c. 43, § 94 et seq. (more familiarly known as the Dram Shop Act). This is an appeal from a judgment entered upon a jury verdict finding a lack of good faith by the defendant company in refusing to settle within the limits of said indemnity policy a claim which was asserted under said statute.

Charlotte O. Farwell brought a suit in the Circuit Court of Henry County, Illinois, against the Ballards under the statute for $50,000 damages claiming loss of support as a result of the Ballards selling intoxicating liquor to her husband, causing his intoxication which resulted in his death. A judgment for $6500 was entered in that case in favor of Charlotte Farwell.

The insurance policy issued to the Ballards by the Citizens Casualty Company of New York (hereinafter called company) provided the company would investigate all reported accidents and defend any suit for damages brought against the insured under the Dram Shop Act, and that all expense incurred by the company

for investigation and defense, including all costs taxed against insured in any such suit, and all interest accruing after entry of judgment would be at the expense of the company. The policy provided that the company would employ its own attorneys in the defense of any claim under the statute brought against insured, and that the company would have full discretion in the conduct of any negotiations for settlement of any claim, and that insured would not admit any liability nor settle any claim unless at their own expense.

The policy further provided that if the company elected to appeal from any judgment it would give notice to the insured of its intention to so do and that the insured would furnish their share of an appeal bond for any portion of a judgment in excess of the policy limit; and that if cash or other securities were not put up by the insured, then the company would cause such proceeding to review the judgment to be conducted without giving any bond.

From the evidence at the trial the jury was entitled to believe the following state of facts: The summons in the Farwell suit was served May 7, 1948, and defendant company was promptly notified. On May 14, 1948, the company employed Welch and Welch, attorneys, to defend the suit. Sheridan Welch, the junior partner, interviewed Bertram Ballard about the middle of May and again about six weeks to two months later. Ballard informed Welch that Fred R. Farwell, husband of Charlotte Farwell, had been in his tavern on the night he was killed and that he had been sold intoxicating liquor, but that to his knowledge Farwell was not intoxicated. Welch told Ballard about the policy limits and told him he could get another attorney to represent him, but that he did not think it was necessary, because usually this kind of case "don't grow too large—usually never amount to too much." Welch also told Ballard that there was nothing to worry about, that "at the most it wouldn't exceed the limits of the policy." A few days after the first interview Ballard went to Welch's law office and asked Sheridan Welch whether he was going to get any witnesses. Later Ballard brought four witnesses to Welch's office to be interviewed. On the night that Farwell was in Ballard's tavern there were 20 to 30 people present.

A written offer to settle the case for $2,500 was delivered to Sheridan Welch by Ballard, and a copy was delivered to Attorney Brian who had been employed by the Ballards in May as their personal attorney after the insurance company had employed Welch and Welch. After Welch read the offer he told Ballard that the company would not be interested in a settlement of the suit at the face of the policy, that "they would probably take it to court and settle for less." Upon Ballard's inquiry, "Who will get stuck for the balance?" Welch commented, "That is up to you," and that there would not be much chance of getting stuck because Polzin, attorney for Charlotte Farwell, was a young attorney.

Brian interviewed a Mr. Johnson who operated a tavern located near the Ballard tavern, and learned that Farwell had been in Johnson's tavern just before going to Ballard's. Johnson said Farwell was sober, but gave Brian the name of his waitress, Margaret Willey, who had waited on Farwell. Brian then conferred with Sheridan Welch and told him to be sure to interview Margaret Willey, because she had continued to serve Farwell and his companion after Johnson had left the tavern.

After the settlement offer of $2,500 had been received, Sheridan Welch told Brian that the company had turned it down, but gave no reason. When Brian asked if there was any other proposition, the answer was, "No." In a later conversation at the Elks Club, Brian told Tom Welch, the senior partner, that there were features about the Farwell case that he did not like; that plaintiff had one small child and that plaintiff was pregnant; and that there always was danger in that kind of case before a jury. Brian testified in the case at bar that he never had said that he "did not believe that the case should be settled," nor that he was "sure the defense would win the case."

Upon the trial, during a recess after the jury was selected, Brian asked Polzin, plaintiff's attorney, "Why don't you make me a proposition—one that I can get this

thing settled—make me one that I can get this thing settled." Polzin then offered to settle for $2,000. Brian asked Polzin to wait and he then told Tom Welch of the offer to settle for $2,000. After Welch commented about not getting through to the company in New York, Brian asked him what he should tell Polzin in reply to the $2,000 offer, and Tom Welch said, "I don't care what you tell him. I am not interested in the settlement." He further stated that if plaintiff got a judgment it would not be for over $1,000 or $1,500.

When the attorneys arrived at the court-house before the trial started, Brian discovered that Witness Johnson would not testify that Farwell was not intoxicated, and Tom Welch decided he should not be called as a witness. Sheridan Welch did not interview Margaret Willey until two days before the trial, but she then refused to talk to him, claiming that plaintiff's attorney had talked to her first.

At the trial no one denied that Farwell had been sold intoxicating liquor in the Ballard tavern. No issue was made that Farwell had not met his death shortly after leaving the Ballard tavern. No issue was made as to plaintiff's loss of support. Margaret Willey testified for the plaintiff on the first day of the trial that Farwell and his companion were intoxicated in the Johnson tavern, that she shut them off and did not give them any more to drink because of their intoxication. No endeavor was made by Welch and Welch to communicate the offer of settlement to the company, although the trial went into the second day and they did not have authority to settle the case.

After judgment had been entered the company filed a notice of appeal. Shortly thereafter Tom Welch told Brian that the company was not going to complete the appeal, and that it offered to pay the face of the policy. Brian urged Welch to do all he could to get the company to change its decision about appealing, saying he thought the case could be reversed because of erroneous instructions; and he pointed out that it would be unfair to the defendants if the appeal were not prosecuted, reminding Welch of the two opportunities the com-

pany had to settle the claim within the policy limit. Brian also notified Welch that the Ballards were willing to put up their share of the cash or security on 5 days' notice, as provided by the policy.

Several weeks later Welch wrote to the Ballards that the company had decided not to complete the appeal. The Ballards then employed Attorneys Black, Black and Borden, who served a written notice on the company demanding that the appeal be perfected. In response the company, although still represented by Welch and Welch, offered to employ Black, Black and Borden as its sole attorneys in the matter. Black, Black and Borden properly and promptly refuse the tendered employment because of the obvious conflict of interest. The company failed to give Ballards the 5 days' notice, as provided by the policy, and the time for filing the appeal bond expired. Although the company later professed to be willing to appeal, it was then too late to protect the Ballards. Had the bond been timely filed, it would have operated as a supersedeas. However, execution having been served on the Ballards, they were required to and did pay the judgment in full.

In the case at bar the jury returned a general verdict favorable to plaintiffs. In addition the jury answered two special interrogatories which, approved by the trial court and incorporated in the judgment, were: (1) that in defending the suit brought by Charlotte Farwell against the Ballards the attorneys for the defendants did not investigate and try said case in the same manner that an ordinarily prudent attorney would have acted under the same or similar circumstances; and (2) that the attorneys for the Citizens Casualty Company of New York, in not settling said case within the policy limits, did not act in good faith without negligence and without fraud.

■ It is well established that an insurer which has issued a liability insurance policy limited in the amount of its coverage may so conduct itself as to be liable for the entire judgment recovered against insured, irrespective of the policy limits However courts differ as to the degree of

proof which the insured must make in order to recover any excess paid by him over the policy limit.

. Some courts have held that where an insurer has assumed control of the defense of a claim, and it has the opportunity to settle the claim within the policy limits, it must do so if that is the reasonable thing to do, and it is liable for its negligent failure so to do. Cavanaugh Bros. v. General Accident Fire & Life Assurance Corp., 79 N.H. 186, 106 A. 604; Douglas v. U. S. Fidelity & Guaranty Co., 81 N.H. 371, 127 A. 708, 37 A.L.R. 1477; Tyger River Pine Co. v. Maryland Casualty Co., 163 S.C. 229, 161 S.E. 491 and Id., 170 S.C. 286, 170 S.E. 346; G. A. Stowers Furniture Co. v. American Indemnity Co., Tex.Com.App., 15 S.W.2d 544. See: 45 C.J.S., Insurance, § 936b, p. 1069. Other courts hold the insured to a high degree of proof to show fraud or bad faith, and to all intents and purposes make one the equivalent of the other. City of Wakefield v. Globe Indemnity Co., 246 Mich. 645, 225 N.W. 643; Best Building Co., Inc. v. Employers Liability Assurance Corp., Ltd., 247 N.Y. 451, 160 N.E. 911, 71 A.L.R. 1464; Abrams v. Factory Mutual Liability Insurance Co., 298 Mass. 141, 10 N.E.2d 82; Georgia Casualty Co. v. Mann, 242 Ky. 447, 46 S.W.2d 777. Defendant argues that the plaintiff in a case such as this must prove bad faith, and that this term contemplates a state of mind with an affirmative design of wrongdoing.

In the case at bar we must apply the law of Illinois, irrespective of which of the conflicting views we might think preferable. As the highest State court of Illinois has not passed upon the question here at issue, we are bound by the decisions of the State's intermediate appellate courts in the absence of persuasive evidence that the highest State court would rule otherwise. West v. American Telephone & Telegraph Co., 311 U.S. 223, 237, 61 S.Ct. 179, 85 L.Ed. 139. The only applicable decision of an Illinois court that has been cited to us or that we have been able to find is Olympia Fields Country Club v. Bankers Indemnity Insurance Co., 1945, 325 Ill.App. 649, 60 N.E.2d 896. In that opinion the court recognized the conflicting decisions of other courts and it cited analyzed and quoted from a number of them.

Defendant relies upon the City of Wakefield case, supra. That decision was by a divided court, and in the Olympia Fields case the court disapproved the majority view in Wakefield, saying that it imposed on the plaintiff "a burden, practically impossible to bear, of proving, in some direct way, the actual state of mind of Campbell when he refused to accept the tentative settlement." [325 Ill.App. 649, 60 N.E.2d 902.] The Illinois court adds: "The opinion of the three judges of the court who did not agree with the opinion of the majority is, in our judgment, far more persuasive than the opinion of the majority."

Defendant also cites Georgia Casualty Co. v. Mann, supra. But the Olympia Fields opinion points out that the decision in that case was severely criticized in Tyger River Pine Co. v. Maryland Casualty Co., 170 S.C. 286, 170 S.E. 346, 349, where the Supreme Court of South Carolina held that an insurer owes the insured the duty of settling a personal injury claim within the policy limits if opportunity to do so is present and if settlement is the reasonable thing to do. In answering the question of whether the insurer acted in good faith, the South Carolina Supreme Court in that opinion stated, "That was a question for the jury to decide in the light of the contract of indemnity, the law pertaining to its construction, and the evidence which showed the action and conduct of the appellant in the premises; the jury by their verdict have in effect said that appellant did not act in good faith. We shall not disturb their finding."

In the Olympia Fields case, supra, the court cites and quotes, apparently with approval, from American Mut. Liability Ins. Co. of Boston, Mass. v. Cooper, 5 Cir., 61 F.2d 446: "In our opinion the insurer cannot escape liability by acting upon what it considers to be for its own interest alone, but it must also appear that it acted in good faith and dealt fairly with the insured. The insurer, as it had a right to do under the policy, assumed exclusive control of the claim against the insured, and took unto

itself the power to determine for the insured all questions of liability, settlement, of defense and management before and during trial, and of appeal after final judgment. We are of opinion that this relationship imposes upon the insurer the duty, not under the terms of the contract strictly speaking, but because of and flowing from it, to act honestly and in good faith toward the insured. It was open to the jury to find that the insurer did not perform this duty." [325 Ill.App. 649, 60 N.E. 901.]

It is of interest to note that in the case of American Mut. Liability Ins. Co., etc., v. Cooper, supra, one of the grounds upon which the court based its conclusion that the insurer did not act in good faith was that it did not have a representative at the trial with authority to settle within the limit of liability named in the policy. In the case at bar, although Attorney Welch did not have authority to settle the case and the company was not represented at the trial by an adjuster or other representative, Welch did not communicate the $2,000 offer to settle to the company.

Another case quoted extensively in the Olympia Fields opinion, and apparently with approval, is Hilker v. Western Automobile Ins. Co. of Fort Scott, Kan., 204 Wis. 1, 231 N.W. 257, 235 N.W. 413. The Illinois court quoted the following (204 Wis. at page 13, 235 N.W. 414): "In express terms the contract imposes no duty at all a breach of which makes the insurer liable to the insured for a failure to settle or compromise a claim. However, all courts are agreed that the insurer does owe to the insured some duty in this respect. * * * By the terms of this contract the absolute control of the defense of such actions is turned over to the insurer, and the insured is excluded from any interference in any negotiations for settlement or legal procedure. * * * So long as the recovery does not exceed the limits of the insurance, the question of whether the claim be compromised or settled, or the manner in which it shall be defended, is a matter of no concern to the insured. However, where an injury occurs for which a recovery may be had in a sum exceeding the amount of the insurance, the interest of the insured becomes one of concern to him. At this point a duty on the part of the insurer to the insured arises. It arises because the insured has bartered to the insurance company all of the rights possessed by him to enable him to discover the extent of the injury and to protect himself as best he can from the consequences of the injury. He has contracted with the insurer that it shall have the exclusive right to settle or compromise the claim, to conduct the defense, and that he will not interfere except at his own cost and expense." [325 Ill.App. 649, 60 N.E. 2d 904.]

In the Hilker case, supra, the court held that the insurer may be held liable for any want of good faith in defending the action or in attempting to adjust claims made against the insured. The court said, 204 Wis. at page 8, 231 N.W. at page 260: "The manner in which the defendant investigated the case and prepared it for trial has an important bearing on this question of good or bad faith." As other elements bearing upon the insurer's liability, the court pointed out that it was apparent that if the insured was found guilty of negligence, a substantial verdict might be expected; also that the adjuster for the insurance company exhibited an indifferent attitude in refusing to discuss settlement with attorneys representing the injured child. The court said, 204 Wis. at page 10, 231 N.W. at page 260: "Under such circumstances the failure to make some more effective effort to adjust the cases does present evidence which sustains the finding that the defendant acted in bad faith toward the plaintiff in handling these claims and conducting this litigation." After a rehearing had been granted the court stated, 204 Wis. at page 15, 235 N.W. at page 415: "This requires the insurance company to make a diligent effort to ascertain the facts upon which only an intelligent and good-faith judgment may be predicated. * * We go only so far as to say that it should exercise reasonable diligence in this behalf, which means such diligence as the great majority of persons use in the same or similar circumstances. This is ordinary care. So it seems to us that the statement in the opinion, which is criticized, to the

effect that a good-faith decision on the part of the insurance company upon the question of settlement must be preceded by the exercise of that degree of care and diligence which a man of ordinary care and prudence would exercise in the investigation and adjustment of claims, states the duty devolving upon the insurer, just as we declare it to be."

In the Olympia Fields opinion the court said, 60 N.E.2d at page 906: "In our judgment, the weight of authority supports the rule that the insurer cannot be held liable for refusing to settle a case before or during trial for an amount within the limits of its liability under the policy although such refusal may result in a judgment against the assured for an amount in excess of the liability of the insurer, *in the absence of fraud, negligence or bad faith.*" (Emphasis supplied) The court then reviewed the evidence showing an offer to settle the case for $3500, the refusal of the insurance company to accept same, the verdict of $20,000 and the subsequent offer to settle for $8,000, which was not accepted by the insurance company. The Illinois court then held that the plaintiff had made out a prima facie case against the insurance company and that the trial court did not err in refusing to direct a verdict for the defendant—hence that the case was properly submitted to the jury.

■ In view of the decision in the Olympia Fields case, as well as the decisions from other States quoted with approval by the court in that case, we conclude that under the law of Illinois an error in judgment by the attorney defending an insurance company in not settling a case within the policy limits is not, in itself, sufficient to prove bad faith. As was suggested in the Georgia Casualty case, supra, attorneys are not endowed with the gift of prophecy so as to be able to predict what the verdict of a jury will be in a personal injury suit. Also the mere fact that the insurance company was unsuccessful in the trial of a case does not in itself show that the defense was made not in good faith. Royal Transit, Inc. v. Central Surety & Ins. Corp., 7 Cir., 168 F.2d 345, 347.

■ We hold it to be the law of Illinois that in investigating, defending, considering questions of settlement, and on the question of appeal, the insurance company must give the interests of the insured equal consideration with its own interests and it must in all respects deal fairly with the insured. The applicable rule is well stated in American Fidelity & Casualty Co., Inc. v. G. A. Nichols Co., 10 Cir., 173 F.2d 830, 832: "When a liability insurance company by the terms of its policy obtains from the insured a power, irrevocable during the continuance of its liability under the policy, to determine whether an offer of compromise of a claim shall be accepted or rejected, it creates a fiduciary relationship between it and the insured with the resulting duties that grow out of such a relationship. Under policies like those here involved, the insurer and the insured owe to each other the duty to exercise the utmost good faith. While the insurance company, in determining whether to accept or reject an offer of compromise, may properly give consideration to its own interests, it must, in good faith, give at least equal consideration to the interests of the insured and if it fails so to do it acts in bad faith."

■ We think defendant's motions for a directed verdict were properly denied, and that the issues were properly submitted to the jury. The Farwell case had many dangerous possibilities. First of all, under the Illinois Dram Shop Act as it existed on the date of trial, the amount of recovery was not limited, and if other necessary conditions were present, liability could attach if the liquor sold contributed in whole or in part to the intoxication of the person, the result of whose intoxication was the basis of the suit. Also, that the Ballards had sold liquor to Farwell on the night he met his death was undeniable. Farwell was but 26 years of age, and the defendant's attorney should have realized that the sympathies of the jury would in all probability be with the widowed mother of his children. Yet the company never offered to settle, even on the basis of nuisance value, and rebuffed each offer of settlement: the written offer forty days before the date of the

trial to settle for $4,000, to which no reply or counter-offer was made; the written offer three weeks before trial to settle for $2,500, to which the attorney for the company replied he was not interested in a settlement for the face of the policy; and the offer made upon the morning of the first day of the trial to settle for $2,000, which was rejected by the defendant's attorney's rather curt statement, "I am not interested in the settlement." Even after the case turned "sour," the company's attorney did not show any interest in attempting to settle the case, and did not report to the insurance company the rapidly deteriorating situation. We think that under such circumstances a jury question was presented on the issue of good faith in the matter of settlement, and that substantial evidence supports the verdict.

As to the investigation before trial, defendant's attorney did not interview Waitress Margaret Willey, who on the trial was the plaintiff's key witness, until two days before the trial, at which time she would not talk to him because she said she had conferred with Mrs. Farwell's attorney. Her refusal to confer should have been a warning her testimony might prove damaging, as up to then defendant's attorneys believed she would testify Farwell was not intoxicated. The jury might well have considered that had the defendant's attorneys exercised due care, the attitude of plaintiff's principal witness could have been discovered at an earlier date, and possibly other witnesses from the large number present in the Ballard tavern the evening of Farwell's death could have been summoned to testify. We think a jury question was presented as to whether defendant company and their attorneys exercised good faith in the manner of investigation, and again substantial evidence supports the verdict.

Defendants insist the Ballards are estopped because Brian, their attorney, participated in the trial and in the preparation thereof. However, Brian's participation was by sufferance. Welch and Welch, as attorneys for the insurance company, never delegated any authority to him in the matter of a settlement. In fact it was

Brian who on his own took the lead and repeatedly endeavored to obtain a settlement of the case, persisting until one of the Welchs apparently became annoyed with his suggestions. The defense of estoppel is without merit.

Defendant claimed error in the receipt and exclusion of evidence, also as to instructions given and instructions refused. It will suffice to say that we have carefully examined each of these alleged errors, but we do not find prejudicial error.

The judgment is affirmed.