GENERAL CASUALTY COMPANY OF WISCONSIN, a corporation, Plaintiff and Counter-Defendant-Appellee,

v.

Walter WHIPPLE, d/b/a Whipple Sales and Service, and Thomas Bickett, Defendants and Counter-Claimants-Appellants.

No. 14327.

United States Court of Appeals Seventh Circuit.

Feb. 24, 1964.

Glen L. Borden, Peoria, Ill., Brian & Wilson, Toulon, Ill., Harry C. Heyl,

Black, Black & Borden, Peoria, Ill., for appellants.

Donald G. Beste, Eugene R. Johnson, Robert D. Jackson, Miller, Westervelt & Johnson, Peoria, Ill., for appellee.

Before HASTINGS, Chief Judge, and CASTLE and KILEY, Circuit Judges.

HASTINGS, Chief Judge.

On or about January 21, 1955, a motor truck owned by Walter Whipple, d/b/a Whipple Sales and Service, and operated by Thomas Bickett was involved in a collision with an automobile driven by one Robert Boley. Riding with Boley in his car were eight other occupants. As a result of the collision, one of such occupants was killed and the others were seriously injured.

General Casualty Company of Wisconsin was the liability insurer for Whipple. Its insurance policy limited its liability to $50,000 for any one occurrence. The policy contained the usual provisions requiring the company to defend the insured and reserving to itself the right to make such investigation, negotiation and settlement as it deemed expedient.

John Boley and three other occupants of the Robert Boley automobile filed a diversity action in the district court against Whipple and Bickett.[1] The aggregate recovery sought was far in excess of General Casualty's policy limits.

General Casualty wrote to Whipple and Bickett, after receipt of the summons served on them, advising that it had engaged a law firm to defend them at the company's expense. In this letter, the company further advised them that the amount of recovery sought exceeded the policy limits and that they could engage other counsel at their own expense, if they so desired. Whipple and Bickett expressed written satisfaction with the company's choice of defense counsel.

General Casualty investigated the accident and defended the Boley suit. The facts relating to the collision in question show that Bickett, while driving the truck, had slowed the truck to a speed of ten to fifteen miles per hour and signaled by hand for a left turn, when the rear of the truck was struck squarely by the Boley automobile in which nine persons were riding.

A jury returned a verdict for the four plaintiffs aggregating $76,500 and judgment for that amount was entered against Whipple and Bickett. No appeal was taken from this judgment.

After first advising Whipple and Bickett that it had elected not to appeal the judgment, General Casualty paid to the clerk of the district court, in partial satisfaction of the judgment, the sum of $51,203.41. This payment covered $50,000 on principal of the judgment (the amount of its policy limit), interest on the judgment to date of payment and court costs.

Thereafter, General Casualty (hereinafter called plaintiff) filed the instant suit in the district court against Whipple and Bickett (hereinafter called defendants). It sought a declaratory judgment that it had fully discharged its contractual duties to defendants under its insurance policy and that it would not be obligated to defend pending or future suits or pay future expenses resulting from the collision on January 21, 1955.

Defendants filed a counterclaim in this action alleging that plaintiff was negligent and guilty of bad faith in its defense of the personal injury suit against them and in failing to appeal the judgment against them. They demanded judgment against plaintiff for the amount of the excess of the verdict over the policy limits, with interest and costs.

The case was submitted to a trial by jury on the issues joined on the complaint and counterclaim. At the close of plaintiff's case and again at the end of all the evidence, plaintiff moved for a di-

1. Merle Whipple, brother of Walter Whipple, and Ralph Montavon were also named as defendants. At the trial, Merle Whipple was dismissed on a directed verdict. Montavon was later dismissed on his motion for judgment notwithstanding the verdict against him.

rected verdict. The trial court reserved its ruling on both motions.

The jury returned a verdict finding the issues for defendants and awarding them damages in the sum of $35,048.64. Judgment was rendered on the verdict.

Plaintiff then moved to set aside the verdict and judgment against it and for judgment in its favor on its pending motions for a directed verdict, or in the alternative for a new trial. The trial court granted plaintiff's motion, vacated and set aside the verdict and judgment for defendants on their counterclaim and entered judgment for plaintiff on its motions for directed verdict. Defendants now appeal from such judgment.

■ On appeal, defendants contend that, viewing the evidence in the light most favorable to them (as we must do), plaintiff was negligent and acted in bad faith in failing to attempt to settle the case before conclusion of the trial and in not appealing the judgment against them. As a consequence, they urge that the district court erred in setting aside the jury verdict and judgment for them and in granting judgment for plaintiff.

Defendants do not contend there was negligence in the accident investigation, choice of defense counsel or the manner in which the defense was conducted.

■ It is well settled that an insurance company, which has issued a policy containing limits on its liability, may so conduct itself as to be liable for the entire judgment recovered against the insured, regardless of the policy limits. Ballard v. Citizens Cas. Co. of New York, 7 Cir., 196 F.2d 96, 99 (1952). While it is conceded that Illinois law governs here, the parties disagree as to the standard of conduct which plaintiff must engage in to be liable beyond the policy limits.

Plaintiff contends defendants must prove conduct with intent to deceive, in the nature of fraud, and cites, *inter alia,* Bentley v. Farmers' Insurance Exchange, 6 Cir., 289 F.2d 59, 60–61 (1961) (applying Michigan law); Slater v. Motorists Mutual Ins. Co., 174 Ohio St. 148, 187

N.E.2d 45, 48 (1962) (applying Ohio law). No cases applying Illinois law are cited in support of this contention.

Defendants state that "[t]he law in Illinois * * * is that the insurer must exercise good faith in all respects to the insured, and if in any respect it is negligent, then it has not acted in good faith toward its insured."

Our court had this issue before it in Ballard v. Citizens Cas. Co. of New York, supra. In an opinion by Judge Duffy, we said that "[t]he only applicable decision of an Illinois court that has been cited to us or that we have been able to find is Olympia Fields Country Club v. Bankers Indemnity Insurance Co., 1945, 325 Ill.App. 649, 60 N.E.2d 896." Id. 196 F.2d at 100. The same is true in the instant case.

The Olympia Fields case was carefully analyzed in Ballard, in which it appears that Olympia Fields expressly rejected cases applying the fraud standard. Id., 196 F.2d at 100. It quoted with apparent approval from cases applying the negligence or bad faith standard of conduct. Id., 196 F.2d at 100–102. At page 102 of 196 F.2d of the opinion, we stated:

"In the Olympia Fields opinion the court said, 60 N.E.2d at page 906: 'In our judgment, the weight of authority supports the rule that the insurer cannot be held liable for refusing to settle a case before or during trial for an amount within the limits of its liability under the policy although such refusal may result in a judgment against the assured for an amount in excess of the liability of the insurer, *in the absence of fraud, negligence or bad faith.'* (Emphasis supplied)"

■ Thus, we conclude that negligence or bad faith is the Illinois standard of conduct to be applied to the facts in determining whether plaintiff is liable beyond the policy limits for failing to settle the case. The district court so instructed the jury.

■■ The test for negligence in this case is that conduct which an ordinary

reasonable man would engage in, not when solely considering the interests of the insurer, but upon giving equal consideration to the interests of the insurer and the insured. Fidelity and Casualty Company of New York v. Robb, 5 Cir., 267 F.2d 473 (1959); Ballard v. Citizens Cas. Co. of New York, supra, 196 F.2d at 102. The burden of proving negligence or bad faith as alleged in their counter-claim is on defendants. Frank B. Connet Lumber Co. v. New Amsterdam Cas. Co., 8 Cir., 236 F.2d 117, 127 (1956); Maryland Casualty Co. v. Cook-O'Brien Const. Co., 8 Cir., 69 F.2d 462, 466 (1934), cert. denied, 293 U.S. 569, 55 S.Ct. 81, 79 L.Ed. 668.

The attorneys engaged by plaintiff and approved by defendants were cognizant of the seriousness of the injuries to the occupants of the automobile and the likelihood that a verdict in favor of the occupants would exceed the policy limit of $50,000. However, they had obtained eye witnesses who estimated the speed of the Boley automobile at between seventy and ninety miles per hour and who had seen Bickett signal by hand for a left turn. After the accident, the automobile was in the right hand lane of the highway. These and other facts disclosed by investigation led plaintiff's attorneys to believe they had a strong defense.

The evidence relating to settlement shows that attorneys who represented the injured occupants offered to settle the case for approximately $190,000.[2] Plaintiff's attorneys never offered to settle for the maximum limits of the policy. Just prior to trial, they were informed by attorneys for one of the occupants that the occupants would not settle for the policy limits.

During the trial, an attorney for the occupants informed plaintiff's attorney that no settlement was possible unless there was an offer from Montavon's[3] insurance carrier in addition to the limits of plaintiff's policy.

Thus, it is undisputed that plaintiff never received or made an offer to settle within the policy limits. Defendants contend that plaintiff had a duty to make such an offer and its failure to do so constituted negligence. Cases cited by defendants in support of this contention are distinguishable from the present case.

In Ballard v. Citizens Cas. Co. of New York, supra, the insured was sued for $50,000 by Farwell for the death of her husband, under the Illinois Dram Shop Act, Ill.Rev.Stat.1951, c. 43, § 94 et seq. The insurance company employed attorneys to defend the suit and the insured engaged a personal attorney. Prior to trial, the company attorney refused an offer to settle the case for the policy limit of $2,500, stating that they could probably settle for less at the trial. At the trial, Farwell's attorney offered to settle for $2,000. The company attorney refused this offer, despite insistence by the insured's attorney that the offer be accepted and that successful defense of the suit appeared difficult. No attempt was made to communicate the offer to the company. A judgment for $6,500 was entered in favor of Farwell. The insured brought suit against the company and the court held, on appeal, that substantial evidence supported the jury verdict and judgment finding lack of good faith by the company and its attorneys in refusing to settle within the policy limits.

In Fidelity and Casualty Company of New York v. Robb, supra, the insurer rejected an offer of settlement for less than the policy limits. The court reversed a jury verdict for the insured due to failure of the trial court to instruct

2. The attorney representing Montavon, one of the original four defendants, testified that the only offer to settle by the occupants' attorneys was for $192,500. One attorney for the occupants stated, by deposition, that he made an offer to settle for $180,000 to $190,000. The other attorney for the occupants testified that the offer to settle was approximately $192,000.

3. Montavon was one of four original defendants. See n. 1 supra.

the jury that the insurer could consider its own interests as well as the interests of the insured.

Bell v. Commercial Insurance Co. of Newark, N. J., 3 Cir., 280 F.2d 514 (1960), held that a jury question existed as to whether the insurer acted in bad faith in failing to attempt to settle the case after conceding liability at pre-trial.

The determination in this class of cases is one of fact and the result in each case depends upon its own peculiar facts. Unlike the above cases, in the instant case the occupants' attorneys made no offer to settle within the policy limits or for any amount reasonably close thereto. ·Plaintiff's attorneys reasonably believed there was no probability of affecting such a settlement and that they had a strong defense. The matter was further influenced by other pending suits arising out of the same collision.

We hold that under the facts of this case, no reasonable person, after equal consideration of the interests of the insurer and the insured, would decide that the insurer had an affirmative duty to attempt to settle the case within the policy limits.

Defendants' second contention is that plaintiff was negligent in failing to appeal the jury verdict and judgment in the personal injury suit.

Plaintiff's duty to defend the suit in the trial court existed by reason of the insurance contract, and if it had a duty to appeal, this duty flowed from the contract.

The applicable provisions of the insurance contract provide:

"II Defense, Settlement, Supplementary Payments

"*As respects the insurance afforded by the other terms of this policy* the company shall:

"(a) defend any suit against the insured alleging such injury, sickness, disease or destruction and seeking damages on account thereof * * *." (Emphasis added.)

In Denham v. La Salle-Madison Hotel Co., 7 Cir., 168 F.2d 576 (1948), cert. denied, 335 U.S. 871, 69 S.Ct. 167, 93 L.Ed. 415, we considered the following similar insurance contract provision:

"It is further agreed that *as respects insurance afforded by this policy,* Underwriters shall—

"(1) Defend the Assured in his name and behalf [in] any suit against the Assured alleging such loss and seeking damages on account thereof, even if such suit is groundless, false or fraudulent * * *." (Emphasis added.) Id., 168 F.2d at 584.

Speaking for the court, Judge Major stated:

"[P]aragraph (1) gives some color to the defendant's argument, [that plaintiff, insurer, had an obligation to defend the insured even though insurer had tendered the policy limit of $10,000] but that paragraph is limited to the phrase which proceeds it, 'as respects insurance afforded by this policy.' Upon plaintiff's tender of $10,000, its liability for the payment of losses was extinguished. It was only obligated to defendant 'as respects insurance afforded by this policy,' and there being no further insurance afforded, we are of the view that its obligation to defend was likewise terminated. Defendant's theory would produce the incongruous situation that plaintiff would have a continuing obligation to defend, notwithstanding its obligation to pay has been exhausted. We are of the view that no such liability was intended by the provision in question and that it cannot reasonably be so construed." Id., 168 F.2d at 584. Accord, Moore v. Columbia Casualty Company, S.D.Ill., 174 F.Supp. 566, 573 (1959).

We hold, in accord with Denham, that since the plaintiff paid into court the full policy limits, plus all costs and interest, its duty to further defend defendants ceased under the terms of its contract.

In view of all the circumstances present in this case, it is our conclusion after considering the evidence in the light most favorable to defendants, that as a matter of law, there is no support for a finding that plaintiff failed to exercise good faith toward defendants in any respect.

The district court did not err in vacating the jury verdict and resulting judgment for defendants, and in entering judgment for plaintiff.

The judgment appealed from is affirmed.

Affirmed.